**NOT FOR PRINTED PUBLICATION**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: <br> EDWARD MANDEL <br> *Debtor.* <br> _____ <br> EDWARD MANDEL, <br> *Appellant,* <br> v. <br> MASTROGIOVANNI SCHORSCH & <br> MERSKY, et al., <br> *Appellees.* | § § § § § § § § § § § § § § § § § | CIVIL ACTION No. 4:12-CV-313 <br><br> JUDGE RON CLARK <br><br> VSL |

### MEMORANDUM OPINION ON APPEAL FROM BANKRUPTCY COURT

Appellant Edward Mandel (debtor) appeals the bankruptcy court's March 28, 2012 Order Regarding the Debtor's Objections to Claim Nos. 27 and 28 (the "Claim Allowance Order"), in which the bankruptcy court allowed Rosa Orenstein ("Orenstein") a claim in the amount of $315,553.00 and allowed Mastrogiovanni, Schorsch, and Mersky, P.C. ("MSM") a claim in the amount of $155,517.00.

Previously, this court dismissed this appeal for Mandel's lack of standing. Mandel appealed this court's dismissal. The Fifth Circuit reversed and remanded, ordering this court to consider the appeal on the merits and holding that Mandel has standing because the debt that is the subject of the Claim Allowance Order has not yet been discharged.[1]

The court affirms the bankruptcy court's ruling.

---

[1] The dischargeability proceeding is currently pending before the bankruptcy court.

# I. BACKGROUND

The underlying facts stem from litigation surrounding the founding and dissolution of White Nile, an internet search engine start-up, begun by Steven Thrasher, Mandel, and Jason Coleman ("White Nile litigation"). The court has stated the underlying facts in detail in a previous Memorandum Opinion regarding Mandel's objections to the claims of Steven Thrasher, Jason Coleman, and White Nile. *See In re Mandel*, No. 4:15-cv-715, 2006 WL 7374428 (E.D. Tex. Dec. 20, 2016). Relevant to this appeal are facts surrounding the dispute over the appointment of, and the fees awarded to, Rosa Orenstein, as Receiver for White Nile, and Rosa Orenstein's retention of MSM as independent counsel, both in the White Nile litigation.

On November 1, 2008, when the litigation between Mandel and Thrasher, Coleman, and White Nile was in state court, the state court appointed Orenstein as receiver for White Nile. Mandel, who asserts an interest in White Nile, entered into an agreed Order to pay 52.5% of Orenstein's fees. This Order provided Orenstein with the authority, subject to further order of the court, to (1) "direct and control White Nile's participation in this litigation"; (2) "take actual possession of all White Nile's books and records, including but not limited to all files of White Nile's current and prior counsel in this litigation, and all bank accounts of White Nile"; and (3) "take constructive possession of all of White Nile's other property."[2] Nov. 2008 Order Appointing Receiver, Ex. 48, at p. 1.[3] The November 2008 Order also stated that Orenstein had "no authority to retain independent counsel, consultants, experts, or professionals without leave of court after notice to all parties and hearing." Nov. 2008 Order Appointing Receiver, Ex. 48, at p. 2.

---

[2] This Order was signed by Judge Mary Murphy.

[3] All exhibits referenced in this Order are exhibits that were admitted by the bankruptcy court at its trial on Claims Nos. 27 and 28.

On May 29, 2009, the state court entered a second Order Appointing Receiver, again providing Orenstein with the power to direct and control White Nile's participation in litigation, take actual possession of White Nile's records, and take constructive possession of all White Nile's other property.[4] May 2009 Order Appointing Receiver, Ex. 49, at pp. 1–2. Unlike the November 2008 Order, the May 2009 Order did not include a provision prohibiting Orenstein from retaining independent counsel. On September 15, 2009, the state court entered an Order approving Orenstein's request to designate MSM as independent counsel and approving payment to both Orenstein and MSM. Payment Order, Ex. 50. Among other things, the court found that Orenstein's "determination that she required the ongoing services of independent counsel was appropriate and within her authority" and that Orenstein's engagement of independent counsel was "in compliance with the Texas Rules of Professional Conduct." Payment Order, Ex. 50, at p. 2. The Payment Order also designated MSM as Orenstein's independent counsel and provided that Mandel would pay 52.5% of MSM's and Orenstein's fees and that Thrasher would pay 47.5% of their fees. The state court further approved Orenstein's and MSM's fees up to September 9, 2009, specifically finding their fees to be fair, reasonable, and necessary. Payment Order, Ex. 50.

Mandel made several payments to Orenstein and MSM following the September 15 Order but eventually claimed to be unable to pay his portion of all of their fees. Orenstein continued to conduct discovery regarding Mandel's claim pursuant to state court orders.

On January 25, 2010, Mandel filed a petition for relief under Chapter 11 of the Bankruptcy Code. Subsequently, Orenstein entered into a settlement agreement regarding Thrasher's obligation to pay 47.5% of her reasonable fees and expenses, under which she received a settlement payment in the total amount of $380,000. Orenstein used a portion of that payment to pay the law

---

[4] This Order was signed by Judge Eric V. Moye.

firms of Hunton & Williams, L.L.P. and Hankinson Levinger. L.L.P. for the legal assistance that they provided to her as receiver.

Orenstein filed a proof of claim for $332,160.61, seeking allowance of her fees and expenses through December 2, 2011. MSM filed a proof of claim for $163,701.75, seeking allowance of their fees and expenses for providing Orenstein legal assistance when she was receiver through December 2, 2011.

Mandel asserted numerous objections to Orenstein's and MSM's claims. On December 2, 2011, the bankruptcy court orally overruled Mandel's objections, reasoning:

> (a) [Mandel] argued that Orenstein did not have the right to retain counsel to represent her, specifically, Hunton & Williams and Hankinson Levinger. The Court found, as a matter of fact and law, that Orenstein has the authority to hire counsel to represent her in the performance of her duty as a receiver. The Court further found that this authority is not unfettered inasmuch as the state court orders appointing Orenstein only require the Debtor to pay her reasonable and necessary expenses.
>
> (b) [Mandel] argued that Orenstein is not entitled to recover fees spent on her efforts to collect her fees and expenses from [Mandel]. The state court, however, instructed Orenstein to investigate [Mandel's] claim that he lacked the financial ability to comply with the orders appointing the receiver. Orenstein and her counsel are entitled to recover fees and expenses for so-called "collection efforts" since those efforts were co-extensive with the state courts orders regarding the investigation of the Debtor's financial ability to comply with the state court's orders.
>
> (c) [Mandel] asserted that he should be excused from payments to Orenstein, because this Court entered an order that contradicts his asserted interest in White Nile, and the state court entered an order approving a settlement between Thrasher and White Nile. The Court overruled this objection to the claims of Orenstein and MSM, because [Mandel's] obligation to Orenstein and her counsel is not dependent on his interest in White Nile, if any. [Mandel's] obligation to pay Orenstein's fees and expenses arises out of the agreement of the parties and the orders of the state court.
>
> (d) [Mandel] asserted that this Court, having excused Orenstein from the trial on [Mandel's] objections to the claims of Coleman, Thrasher and White Nile, relieved Orenstein from her duties as receiver and modified the state court orders appointing her. [Mandel], however, misinterprets this court's order. This court

was simply allowing Orenstein to not appear at trial without violating her fiduciary duties when the claims she was asserting were duplicative of the derivative claims asserted by Thrasher for White Nile, and there was a significant risk of nonpayment to her and her counsel.

    (e) [Mandel] argued that Orenstein's fees should be discounted, because she "lost twelve or thirteen" matters," [sic] according to [Mandel's] counsel. The Court overruled that objection to the extent it related solely to the number of losing matters. The fact that Orenstein did not ultimately prevail on all of her legal challenges does not mean that she cannot recover fees and expenses, but goes, instead, to the reasonableness of her fees and expenses.

    (f) [Mandel] argued that Orenstein should not recover any fees or expenses in connection with her participation in [Mandel's] bankruptcy case. The Court overruled this objection to the claims of Orenstein and MSM, because the orders appointing Orenstein as receiver authorize her to direct and control White Nile's participation in this case in order to protect White Nile's claims against this estate. Orenstein, in fact, participated in this case to protect White Nile's claims against this estate.

    (g) Finally, [Mandel] argued that Orenstein is not entitled to be paid for her fees and expenses incurred in her collection efforts in this Court. The Court overruled this objection, in part. Orenstein's right to be paid is contractual in nature. Under Texas state law, Orenstein is entitled to be paid for her collection efforts due to [Mandel's] breach of his agreement to pay her fees. Orenstein, however, is not entitled to be paid for her own time spent in this Court seeking to collect her fees from [Mandel's] estate.

*In re Mandel*, No. 10-40219 (Bankr. E.D. Tex. Mar. 28, 2012) (findings of fact and conclusions of law re: Mandel's objections to claim nos. 27 and 28). After announcing this ruling, the parties introduced evidence and argument regarding Mandel's remaining objections to the claims of Orenstein and MSM that: (1) Orenstein and MSM filed their claims in an estimated amount as of the petition date and failed to attach sufficient documentation, and therefore, their claims lacked prima facie validity; and (2) attorney's fees that are the subject of the claims were unreasonable and to some extent, unnecessary.

Ultimately, the bankruptcy court found that Orenstein and MSM did not take frivolous or unreasonable legal positions in their non-bankruptcy litigation with Mandel, but did occasionally

5

make inexplicable choices in the bankruptcy case, and found that Orenstein was entitled to an allowed unsecured claim in the amount of $315,553.00 for her fair, reasonable, and necessary receiver's fees and expenses and that MSM was entitled to an allowed unsecured claim in the total amount of $155,517.00 for MSM's fair, reasonable, and necessary attorney's fees.

## II. ISSUES PRESENTED

Mandel raises the following issues on appeal:

(1) whether the bankruptcy court committed reversible error in concluding that the Receivership Orders authorized Orenstein to represent White Nile in Mandel's bankruptcy case, such that Orenstein and MSM could be compensated by Mandel for such services;

(2) whether the bankruptcy court committed reversible error in concluding that Orenstein and MSM were acting within the scope of the Receivership Orders so as to be entitled to compensation thereunder;

(3) whether the bankruptcy court committed reversible error in awarding Orenstein compensation for services that she performed as an attorney, since the Receivership Orders did not authorize her to provide such services;

(4) whether the bankruptcy court committed reversible error in awarding Orenstein compensation for service she performed as legal counsel, as well as the legal services of Hunton & Williams, L.L.P. and Hankinson Levinger, L.L.P., since the Receivership Orders did not authorize the retention of these attorneys or of Orenstein as legal counsel;

(5) whether the bankruptcy court, applying section 38.001 of the Texas Civil Practice and Remedies Code, committed reversible error in awarding fees and expenses to Orenstein and MSM for multiple proceedings in which they lost; and

(6) whether the bankruptcy court committed reversible error in concluding that pre-petition unsecured creditors, such as Orenstein and MSM, are entitled to post-petition attorney's fees and expenses under the Bankruptcy Code.

## III. STANDARD OF REVIEW

District courts review bankruptcy rulings and decisions under the same standards employed by federal courts of appeal: a bankruptcy court's findings of fact are reviewed for clear error, and its conclusions of law are reviewed de novo. *In re Nat'l Gypsum Co.*, 208 F.3d 498, 504 (5th Cir. 2000). A finding of fact is clearly erroneous only if, based on all of the evidence, the district court is left "with the definite and firm conviction that a mistake has been made." *Robertson v. Dennis*, 330 F.3d 396, 401 (5th Cir. 2003). "This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *In re Renaissance Hosp. Grand Prairie Inc.*, 713 F.3d 285, 294 (5th Cir. 2013). Due regard must be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses. FED. R. BANKR. P. 8013; *Matter of Herby's Foods, Inc.*, 2 F.3d 128, 131 (1993).

## IV. ANALYSIS

**A. The bankruptcy court did not err in concluding that the Receivership Orders authorized Orenstein to represent White Nile in Mandel's bankruptcy case.**

Mandel first argues on appeal that the bankruptcy court committed reversible error in concluding that the Receivership Orders authorized Orenstein to represent White Nile in Mandel's bankruptcy case, such that Orenstein and MSM could be compensated by Mandel for such services. "A receiver has only that authority conferred by the Court's order appointing [her]." *Clay Expl., Inc. v. Santa Rosa Operating, LLC*, 442 S.W.3d 795, 800 (Tex. App.—Houston [14th

7

Dist.] 2014, no pet.) (quoting *Ex Parte Hodges*, 625 S.W.2d 304, 306 (Tex. 1981)). Receivership orders, "like other written instruments, are to be construed as a whole toward the end of harmonizing and giving effect to all the court has written." *Clay Expl., Inc.*, 442 S.W.3d at 800 (quoting *Constance v. Constance*, 544 S.W.2d 659, 660 (Tex. 1976)).

The Receivership Orders specifically authorized Orenstein to "direct and control White Nile's participation in this litigation." Nov. 2008 Order Appointing Receiver, Ex. 48, at p. 1; May 2008 Order Appointing Receiver, Ex. 49, at p. 1. "The ordinary purpose of a receivership is to take full charge and possession of property involved in litigation, in order to protect, defend and preserve it, impound and hold it subject to the order of the court, or, if necessary, to administer or manage it, 'upon a principle of justice for the benefit of all concerned,' pending final determination of the litigation and the rights of the parties." *Staggs v. Pena*, 133 S.W.2d 212, 214 (Tex. Civ. App. 1939, no writ) (internal citation omitted).

In this case, Orenstein was charged with directing and controlling White Nile's participation in litigation of claims against White Nile in order to protect, defend, and preserve the property of White Nile. After Mandel voluntarily filed for bankruptcy and removed the White Nile litigation to the Bankruptcy Court, Orenstein's position as Receiver remained important as she worked to preserve White Nile's claims against Mandel's estate, as Mandel was one of the founders and shareholders of White Nile. The bankruptcy court did not err in concluding that the Receivership Orders authorized Orenstein to represent White Nile in Mandel's bankruptcy case. Mandel's first point of error on appeal is overruled.

**B.  The bankruptcy court did not err in concluding that Orenstein and MSM were acting within the scope of the Receivership Orders.**

Mandel's second issue on appeal is that the bankruptcy court committed reversible error in concluding that Orenstein and MSM were acting within the scope of the Receivership Orders so

8

as to be entitled to compensation thereunder. Mandel does not brief this issue separate and apart from his first issue on appeal. This issue is therefore waived. *See Adams v. Unione Mediterranea Di Scurta*, 364 F.3d 646, 653 (5th Cir. 2004). Mandel's appeal on this ground is overruled as waived, and in the alternative, it is denied for the reasons stated above.

C. **The bankruptcy court did not err in awarding Orenstein compensation for services that she performed as an attorney.**

Mandel's next argument on appeal is that the bankruptcy court committed reversible error in awarding Orenstein compensation for services that she performed as an attorney, since the Receivership Orders did not authorize her to provide such services. Specifically, Mandel takes issue with the bankruptcy court allowing Orenstein to recover attorney's fees and costs for her efforts to collect payment owed by Mandel under the Receivership Orders and Payment Order.[5]

When Mandel claimed to be unable to pay the fees owed to Orenstein, the state court ordered Orenstein and Mandel to engage in discovery related to Mandel's alleged inability to pay Orenstein's fees. Dec. 1 Trans., Dkt. # 22, at p. 146. Multiple parties, the undersigned, and Judge Rhoades, the learned bankruptcy court Judge in this matter, have commented on Mandel's litigiousness, throughout the eight long years of Mandel's bankruptcy litigation, and all of the related adversary proceedings, state court proceedings, federal district court proceedings, and endless appeals of nearly every outcome in nearly every court. Mandel's resistance to Orenstein's request for information supporting his claim that he could no longer afford to pay his portion of

---

[5] Mandel's appellant brief is not a model of clarity. The list of issues presented at the beginning of his brief does not correspond with the headings throughout his brief, and several parts of his briefing seem unrelated to his list of issues presented. The court has expended numerous resources attempting to piece together Mandel's brief. To the extent that Mandel's argument that Orenstein is not entitled to attorney fees is not actually an argument that Orenstein is not entitled to attorney fees for her collection efforts, this issue on appeal is waived. *See Adams v. Unione Mediterranea Di Scurta*, 364 F.3d 646, 653 (5th Cir. 2004).

her fees and expenses forced both Orenstein and the state court to spend many hours enforcing Orenstein's request for payment.

Orenstein is a highly experienced bankruptcy attorney. There is some evidence in the record that she viewed questions and tasks both as a bankruptcy attorney and as Receiver for White Nile. For example, at the bankruptcy court's trial on this matter, counsel for Mandel asked Orenstein, "What amount of the $250,000 you are seeking today are for your services as Receiver and what amount of it is for your's or your law firm's services as attorneys?" Dec. 1 Trans., Dkt. # 22, at p. 81. Orenstein responded, "It's very hard to divide those up because my brain doesn't fully—I'm reading this document only as a Receiver. My legal training comes in. If I'm reading things, I'm analyzing them as a lawyer, as well." Dec. 1 Trans., Dkt. # 22, at p. 81. Mandel points to no time entry, and the court can find none, in which Orenstein attempts to recover fees solely in her capacity as an attorney for herself, unrelated to her capacity as Receiver. Orenstein's experience as an attorney was necessary to her performance as Receiver in this matter, given the state court's orders for Orenstein to pursue Mandel's assertions that he could not afford payment, given Mandel's litigiousness, and given the complexity of the legal and factual issues in this case. Orenstein is entitled to fees to the extent that they are co-extensive with court-ordered and necessary collection efforts for payments owed under the Receiver Orders and Payment Order. Mandel's appeal on this issue is overruled.

**D.  The bankruptcy court did not err in awarding compensation to Orenstein for her own legal services as well as the legal services of Hunton & Williams, L.L.P. and Hankinson Levinger, L.L.P.**

Next, Mandel argues that the bankruptcy court committed reversible error in awarding Orenstein compensation for service she performed as the legal counsel, as well as the legal services of Hunton & Williams, L.L.P. and Hankinson Levinger, L.L.P., since the Receivership Orders did

not authorize the retention of these attorneys or of Orenstein as legal counsel. For the reasons outlined above, any argument related to Orenstein collecting fees related to her collection efforts for fees owed under the Receiver or Payment Orders is overruled.

The bankruptcy court already found that Orenstein and MSM "occasionally brought multiple lawyers to hearings in the [bankruptcy court] for no obvious reason." *In re Mandel*, No. 10-40219 (Bankr. E.D. Tex. Mar. 28, 2012) (findings of fact and conclusions of law re: Mandel's objections to claim nos. 27 and 28). As a result of Orenstein and MSM bringing extra attorneys to proceedings in the bankruptcy court, the bankruptcy court reduced the claim that Orenstein was seeking from $332,160.61 to $315,553.00 and reduced the claim that MSM was seeking from $163,701.75 to $155,517.00. *In re Mandel*, No. 10-40219 (Bankr. E.D. Tex. Mar. 28, 2012) (findings of fact and conclusions of law re: Mandel's objections to claim nos. 27 and 28). The bankruptcy court accounted for the unauthorized retention of superfluous attorneys in determining the total amount of the claim allowed. Mandel's argument on this issue is overruled.

E.  **The bankruptcy court did not commit reversible error in awarding fees and expenses to Orenstein and MSM for the proceedings in which they lost.**

Next, Mandel argues that the bankruptcy court committed reversible error in applying section 38.001 of the Texas Civil Practice and Remedies Code to award fees and expenses to Orenstein and MSM for multiple proceedings in which they lost. The bankruptcy court did not cite to or reference section 38.001 of the Texas Civil Practice and Remedies Code in the Findings of Fact and Conclusions of Law. *In re Mandel*, No. 10-40219 (Bankr. E.D. Tex. Mar. 28, 2012) (findings of fact and conclusions of law re: Mandel's objections to claim nos. 27 and 28). Rather, the bankruptcy court awarded Orenstein fees under *Bergeron v. Sessions*, 561 S.W.2d 551, 554 (Tex. Civ. App.—Dallas 1997, writ ref'd n.r.e.), and the bankruptcy court awarded both MSM and

11

Orenstein only fees that were "reasonable and necessary," as outlined in the Payment Order. Payment Order, Ex. 50.

### 1. *Orenstein's Compensation*

A receiver's compensation is to be determined by the overall value of her services, not by the receiver's win/loss record. *Bergeron*, 561 S.W.2d at 552. The "controlling" factors in determining this value are:

(1) the nature, extent and value of the administered estate;

(2) the complexity and difficulty of the work;

(3) the time spent;

(4) the knowledge, experience, labor, and skill required of, or devoted by the receiver;

(5) the diligence and thoroughness displayed; and

(6) the results accomplished.

*Id.* at 554–55.

#### a. *The nature, extent, and value of the administered estate*

Orenstein was appointed Receiver to protect the assets of White Nile. White Nile's most valuable asset was its intellectual property, the ownership of which was highly litigated due to its potentially high future rate of return. This factor weighs in favor of a higher value of compensation for Orenstein's services.

#### b. *The complexity and difficulty of the work*

Although Orenstein was appointed Receiver in a state court proceeding, Mandel subsequently removed the case to the bankruptcy court. The bankruptcy proceedings surrounding White Nile spun off several adversary proceedings, several appeals, challenges before the patent office, a remand to state court, and appeals in state court, among other things. The vast proceedings

and issues before these courts show the complexity and difficulty of services as Receiver for White Nile. This factor weighs in favor of a higher value of compensation for the Receiver's services.

    *c.*  *The time spent*

Mandel again objects vaguely and broadly to the time that Orenstein spent as Receiver in this case. However, Mandel objects to no specific time entries before this court and objected to no specific time entries before the bankruptcy court. As noted above, Orenstein spent a tremendous amount of time as Receiver in this case, due to the litigiousness of the parties (primarily Mandel) and the highly contentious issues in this case. This factor weighs in favor of a higher value of compensation for Orenstein.

    *d.*  *The knowledge, experience, labor, and skill required of, or devoted by Orenstein*

Orenstein is a highly experienced attorney, as discussed above, and her experience was required in light of the complexity of the issues in this case. This factor weighs in favor of a higher value of compensation for Orenstein.

    *e.*  *The diligence and thoroughness displayed*

Orenstein was thorough. The bankruptcy court already accounted for the times in which Orenstein was overly thorough by not agreeing to certain orders that may have saved the estate money, or by bringing too many counsel to certain hearings. This factor weighs slightly in favor of a higher value of compensation for Orenstein.

    *f.*  *The results accomplished*

As Mandel notes, Orenstein did not win every matter that she pursued on behalf of White Nile. However, this is but one of the six controlling factors that the court must consider. Moreover, her arguments and positions on the issues which she lost were neither frivolous nor a waste of resources. Upon reviewing the *Bergeron* factors, the court finds that the bankruptcy court did not

err in holding that Orenstein is entitled to an allowed unsecured claim in the amount of $315,553.00 for her fair, reasonable, and necessary receiver's fees and expenses.

### 2. *MSM's Compensation*

Likewise, the bankruptcy court did not base its allowance of MSM's claim for fees on section 38.001 of the Texas Civil Practice and Remedies Code. The bankruptcy court correctly noted that Orenstein's authority to retain outside counsel such as MSM was not unfettered, as previous state court orders only required Mandel to pay Orenstein and MSM "reasonable and necessary" expenses. *See* Nov. 2008 Order Appointing Receiver, Ex. 48; May 2009 Order Appointing Receiver, Ex. 49; Payment Order, Ex. 50. The bankruptcy court reduced MSM's claim by approximately $8,000, finding that some of MSM's claim fees were not "fair, reasonable, and necessary." Mandel's argument that the bankruptcy court erroneously awarded fees under section 38.001 of the Texas Civil Practice and Remedies Code is overruled, as it is clear from the bankruptcy court's Findings of Fact and Conclusions of Law that section 38.001 was not the basis for the bankruptcy court's allowance of either Orenstein's or MSM's claim.

**F.     The bankruptcy court did not err in concluding that Orenstein and MSM are entitled to post-petition attorney's fees and expenses.**

Mandel's final issue on appeal is whether the bankruptcy court committed reversible error in concluding that pre-petition unsecured creditors, such as Orenstein and MSM, are entitled to post-petition attorney's fees and expenses under the Bankruptcy Code. "Obligations which arise out of [pre-petition] contracts, but are due [post-petition], are [pre-petition] debts." *In re E. Tex. Steel Facilities, Inc.*, 117 B.R. 235, 242–43 (Bankr. N.D. Tex. 1990).

The Receivership Orders were agreed orders between Mandel, or Mandel's attorney and representatives, White Nile or its representatives, and Thrasher, or Thrasher's attorney and representatives. Under Texas law, agreed orders are treated as contracts between the parties to the

14

agreed order. *See, e.g.*, *In re Thornburg*, 277 B.R. 719, 726 (Bankr. E.D. Tex. 2002); *Keys v. Litton Loan Serv., L.P.*, No. 14-07-00809, 2009 WL 4022178, at *2–3 (Tex. App.—Houston [14th Dist.] 2009, no pet.); *West v. Brenntag Sw., Inc.*, 168 S.W.3d 327, 337 (Tex. App.—Texarkana 2005, pet. denied). Mandel agreed to pay 52.5% of Orenstein's fees. Nov. 2008 Order Appointing Receiver, Ex. 48; May 2008 Order Appointing Receiver, Ex. 49.

Because Mandel's obligation to pay Orenstein's and MSM's fees arose from a pre-petition contract, they are properly considered pre-petition fees and expenses. The bankruptcy court therefore awarded only pre-petition fees and expenses. Mandel's appeal on this ground is overruled.

## V. CONCLUSION

IT IS THEREFORE ORDERED that the bankruptcy court's March 28, 2012 Order Regarding the Debtor's Objections to Claim Nos. 27 and 28 is AFFIRMED.

**So ORDERED and SIGNED this 31st day of March, 2017.**

_____
Ron Clark, United States District Judge